JOSEPH BLITMAN and SAMUEL HARRISON, Respondents, *v.* MOE LOEB, Appellant.

First Department, April 20, 1917.

Landlord and tenant — alleged breach of covenants to maintain board walks — evidence insufficient to vary terms of written lease.

In an action by the lessees of a hotel for an alleged breach of the covenants and conditions of the lease by the defendant in failing to keep and maintain certain board walks in repair, the defendant denied that he ever made any lease to the plaintiffs, and claimed that it was made by a corporation of which he was president and treasurer, and introduced in evidence said lease executed by the corporation, with all the formalities except the actual affixing of the lessor's corporate seal and bearing the plaintiffs' signature and the signature of the corporation,

under which it was not to make any repairs whatever. The plaintiffs claimed that notwithstanding the genuineness of the signatures the lease was not the one they executed.

*Held,* that a verdict in favor of the plaintiffs is against the weight of the evidence, which was insufficient as a basis for disregarding the provisions of the written lease, and that the complaint should be dismissed.

Appeal by the defendant, Moe Loeb, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 6th day of March, 1916, upon the verdict of a jury for $750, and also from an order entered in said clerk's office on the 8th day of March, 1916, denying defendant's motion for a new trial made upon the minutes.

*Arthur Gutman,* for the appellant.

*Charles S. Rosenthal,* for the respondents.

Davis, J.:

The plaintiffs are copartners, and they allege that they leased from the defendant the St. George Hotel at Rockaway Beach for the summer season of 1913, beginning about April first and extending to about the first of October. This hotel was situated near the board walk at Rockaway Beach, and leading from the board walk was another board walk used by people to go to and from the St. George Hotel. There was still another board walk in the rear of the hotel. These latter two walks were private. The plaintiffs allege that the defendant reserved control of the walk in front of the premises and agreed to keep it in repair during the term of the lease. It appears that in the early part of July, 1913, after the plaintiffs had gone into possession and opened up their business, one of the board walks caved in as the result of which the plaintiffs were deprived of the use of that portion of the premises used as a washroom and toilet. The plaintiffs also allege that in the early part of August, 1913, a large part of the board walk directly in front of the premises caved in, and police officers were stationed there to prohibit people from passing the premises, thereby depriving the plaintiffs of the possession of their place and destroying their business, as the result of which they claim to have been damaged in the sum of $3,000. The complaint

further alleges that by reason of this cave-in of the board walk of which the defendant had notice, the plaintiffs were damaged, and that the keeping and maintaining of the board walks in this dangerous condition was a breach of the defendant's covenants and conditions under the lease.  The chief issue litigated at the trial was whether or not the defendant made a lease to the plaintiffs under which he agreed to make outside repairs such as the repair of the board walks in question.  The defendant denies that he ever made any lease whatever to the plaintiffs, but claims that the lease was made by the Meyer-Loeb Company, and that under that lease the Meyer-Loeb Company was not to make any repairs whatever.  In support of this defense the defendant introduced in evidence a formal, written lease dated the 12th of May, 1913, between the Meyer-Loeb Company, a corporation, as lessor, and the plaintiffs, as lessees.  The subject of this lease was the St. George Hotel, Rockaway Beach, L. I.  The term of the lease was from the 12th of May, 1913, to the 15th of September, 1913, at the rental of $2,500, payable $1,250 on the execution of the lease; $500 on June 30, 1913, and $750 on July 7, 1913.  This lease concededly bears the genuine signature of the Meyer-Loeb Company, by Moe Loeb, president and treasurer.  It also bears the genuine signature of the plaintiff Harrison, and it bears the genuine signature of the plaintiffs' manager, Goldinger, as witness.  But the plaintiffs say that notwithstanding the genuineness of these signatures, this lease is not the one they executed, and they were allowed to testify as to conversations had with the defendant before this particular paper was signed by them, and they say that in those conversations the defendant Loeb said that he would lease the premises as lessor; that he would make outside repairs; that he particularly referred to the bad condition of the walks in front of the hotel and said that he would fix them.  There is evidence here that after the execution of the formal lease just referred to the walk got out of order, and that the defendant Moe Loeb actually sent a lot of lumber with the carpenters and made some repairs.  The plaintiff Harrison testified that he was present at the office of the notary, Vogel, when the lease in evidence was signed and that Vogel read over a lease to

First Department, April, 1917. [Vol. 177.

them. These plaintiffs do not understand the English language well, and cannot read. Harrison testified in a vague way that when Vogel read the lease to them, *i. e.*, the lease which they signed, he read in effect that Moe Loeb was the lessor. Vogel denies that he so read the lease, but asserts that he read it as it was written and as it appears in the lease in evidence. After Vogel read the lease to the plaintiffs, a copy of it was given to the plaintiff Harrison, who gave it to the plaintiff Blitman. Harrison says that the lease was never returned to him. The plaintiff Blitman says that he kept a copy of the paper that Harrison gave him until the last payment was to be made, and then he took it to Loeb and asked Loeb to sign and receipt for the last payment. He says that Loeb took the copy of the lease promising to mail it to Blitman with a receipt. Blitman says he never thereafter received this paper from Loeb. It appears that the plaintiffs, in an effort to get back the paper, lodged a complaint against Loeb in the Police Court. Loeb appeared and the magistrate directed him to send Blitman a receipt for the money. Blitman says that he never got a receipt and never got the lease.

The defendant called the notary, Vogel, by whom the lease was drawn. He testified positively that the formal lease in evidence was the one signed by the various parties and that after the lease was signed in duplicate he gave one copy to the plaintiffs and kept one himself. He is quite positive that he read the lease to the plaintiffs just as it exists in the lease in evidence. Some effort was made to discredit this witness and the genuineness of the lease, because of the statement in his certificate of acknowledgment that Moe Loeb, the president of the lessor corporation, deposed before him that he knew the corporate seal "attached to said instrument" and that the seal was affixed by order of the board of directors of the corporation, when in fact the lease bore no seal of the corporation. The explanation of this omission by the witness was satisfactory and left the credit of his testimony unimpaired. On cross-examination Vogel testified that a few days before he testified he gave the lease to the defendant Loeb who held it two or three days and then returned it. There seems to be a suggestion of forgery in this testimony consisting of a change in

that part of the body of the instrument relating to repairs, but it amounts to a mere suggestion and is negligible. Vogel testified that the leases were typewritten by his employee, Miss Rosenberg, and the latter's testimony was in substance that her employer, Vogel, dictated the lease in the presence of all the parties; that she saw the parties execute the lease; that she heard it read to the plaintiffs; that the lease in evidence was the very paper typewritten by her and bound up by her; that the copy in evidence is the carbon copy; that Vogel kept a copy in his safe and that the lease in evidence is in the same condition as it was when she typewrote it. On cross-examination she stated that her notebook containing the dictated material of this lease had been thrown away, it being her custom to keep them only about two years.

The defendant was then called and testified that the Meyer-Loeb Company owned the hotel in question; that the corporation consisted of Henry Meyer, F. Loeserman and the defendant, and that he was its president and treasurer; that when the lease was executed the name of Meyer-Loeb Company was in it as lessor. The witness said that the plaintiffs complained to him of a caving in of the board walk, and he admitted that he had done some repairs, but asserted that they were very slight, and were made as a favor to the plaintiffs. He also admitted that he was summoned before the magistrate and interrogated about the plaintiffs' copy of the lease, and that he promised to make a search for it, but that he had been unable to find it. The witness then describes the meeting in Vogel's office, and the reading of the lease aloud to the parties, and he states positively that the corporate seal of the defendant was there at the time, but that they forgot to mention it or affix it. He also states that he had a copy of the resolution of the board of directors authorizing the transaction, and that he showed it to Vogel.

The jury rendered a verdict in plaintiffs' favor for $750, which under the charge of the court was the difference between the rent reserved in the lease for the period of interference because of the bad condition of the walk and the reasonable rental value of the use of the premises in their bad condition during the same period.

. I think this judgment is wrong and the verdict against the evidence. Here is a written lease, executed with all the formalities except the actual affixing of the lessor's corporate seal, and concededly bearing the plaintiffs' signature and the signature of the corporation. It is disregarded and set aside upon evidence too slight, in my opinion, to justify such action.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and SHEARN, JJ., concurred.

Judgment and order reversed, with costs, and complaint dismissed, with costs.